457 A.2d 546

**In the Matter of Laura FIRSTER, a minor.**

**Appeal of Laura FIRSTER.**

Superior Court of Pennsylvania.

Argued Nov. 8, 1982.

Filed March 11, 1983.

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellant.

Dana S. Jones, Assistant District Attorney, Erie, for participating party.

Before CAVANAUGH, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

This appeal is from the denial of a juvenile's petition for release from detention. Appellant raises two issues. First, she argues that the statutory parameters for the sentencing of juveniles, as stated in 42 Pa.C.S.A. 6353(a), were not complied with. Second, she maintains that even if those statutory requirements were met, that they work a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We hold that the statute in question was not followed and that the appellant should be released. It is, therefore, unnecessary for us to reach the constitutional issue.[1] We reverse.

The procedural history of this case is as follows. On February 26, 1981, appellant committed two thefts of retail goods.[2] The following July 13, she was found guilty by a District Magistrate on both counts of retail theft, a summary violation.[3] Her fines and costs amounted to $58 on the first violation and $78 on the second. Subsequent to a master's hearing, a dispositional hearing was held in the Court of Common Pleas. On September 29, 1981, that Court found her to be delinquent through failure to pay the fines. She was then placed "for an indefinite period of time" in Andromeda II, a juvenile treatment facility.

In early May of 1982, appellant ran away from that facility but was detained on May 10 of that year. On May

1. Judicial economy is not the only basis for our declining to deal with the Equal Protection challenge to the statute. Sound jurisprudential policy requires, in general, that decisions be based on the narrowest grounds available; and, in particular, that issues of a constitutional dimension not be resolved unless that resolution is essential for the disposition of an appeal.

2. From one store she shoplifted three types of peanuts, a cigarette lighter and a smoked meat snack with a total value of $10.23. From another store, a bathing suit and a pair of jeans were taken with a total value of $46. From July 1 through September 29, 1981, she was in detention as a dependent.

3. 18 Pa.C.S.A. 3929. No appeal was taken from these convictions.

12, a master's hearing recommendation was made to the trial court that her confinement be continued. This recommendation was adopted by the trial court. On May 28, 1982, the petition for release and to close jurisdiction was denied. That same day, the Court ordered her placed in a Detention Center. By order of the court on June 10, 1982, she was removed to Vision Quest, another juvenile treatment program. Her confinement continues through the time of this appeal.

For our purposes here, three procedural facts are of particular importance. First, she was found to be delinquent by reason of her failure to pay a fine for a summary offense and was sentenced on September 29, 1981. Second, her petition for release was denied on May 28, 1982. Third, she remains in confinement.

A delinquent act is statutorily defined:

(2) The term shall not include: ... (ii) summary offenses, unless the child fails to pay a fine levied thereunder...

42 Pa.C.S.A. 6302.[4]

Thus, within the terms of this act, appellant committed a delinquent act and could properly be sentenced by the Court. Compare, *In the Interest of Ryan*, 277 Pa.Super. 433, 419 A.2d 1224 (1980), and *In the Interest of Leonardo*, 291 Pa.Super. 644, 436 A.2d 685 (1981) (Per Brosky, J., with two Judges concurring in the result). The question before us then is whether that sentence also conformed with statutory requirements.

The relevant portion of those requirements are:

**4.** While the propriety of this provision is not before us, we are moved to comment on the curious value judgment the legislature made here. The substantive summary offense cannot constitute a delinquent act; only the failure to pay the fine can. Thus, the legislature seems to have concluded that a child from a well to do family, which can afford to pay the fines, is less in need of treatment and rehabilitation than a child from a family without economic resources.

This somewhat dubious basis on which a child is adjudicated delinquent makes it all the more important that a judicial review of the case be performed as mandated by 42 Pa.C.S.A. 6353(a), infra.

No child shall initially be committed to an institution for a period longer than three years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less. The initial commitment may be extended for a similar period of time, or modified, if the court finds after hearing that the extension or modification will effectuate the original purpose for which the order was entered.

42 Pa.C.S.A. 6353(a). In order to determine the maximum initial commitment period that appellant could have been legally subjected to, it is necessary to establish the period of time an adult could have been sentenced for the same offense. "A person who has been convicted of a summary offense may be sentenced to imprisonment for a term which shall be fixed by the court at not more than 90 days." 18 Pa.C.S.A. 1105. An adult could be sentenced for that period of time for failure to pay the fine. 42 Pa.C.S.A. 9772.

In order for the instant case to have conformed with the statutory requirements for juvenile commitment for delinquency, it was necessary for a modification hearing to have been held prior to the end of the initial 90 day commitment period which was December 27.[5] (Or, in the alternative, that she have been released at or before the end of the 90 days.) A hearing was not held here for more than four months after the expiration of the period.

**5.** The second sentence of § 6353(a), quoted above, could have been drafted more explicitly, to make clear that the hearing to extend or modify the initial commitment period be held prior to the expiration of the initial commitment period. Even though this was not done, that is the only interpretation of the statute which is proper. This is because, once the initial commitment period has run, the child should be released. (Absent a hearing.) Once released, we do not think it proper for her to be recommitted by a modification or extension hearing. At that point, a new adjudication of delinquency would have to be made. The other alternative would be to not release the child at the end of the initial commitment period and then hold a modification hearing. However, holding the child after the end of the initial commitment period, without an extension being in effect, would also be contrary to the requirements of the statute. For the period between the expiration of the initial commitment period and the extension hearing order, the child would be held without legal authority to do so.

The hearing requirements of § 6353(a), further the purposes of the juvenile act.

> This chapter shall be interpreted and construed as to effectuate the following purposes: ...
>
>> (2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation.

42 Pa.C.S.A. § 6301(b). By mandating a review of the juvenile's status, the provision seeks to determine whether the child's welfare would be advanced through continued commitment. Conversely, a failure to hold such a hearing runs counter to the purposes of the juvenile act, as well as working a violation of § 6353(a).

In its opinion, the trial court states that the requirements of § 6353 are not applicable here because, "the failure to pay a fine levied for a summary offense is a specific delinquent act." The failure to pay a fine for a summary offense is indeed specifically pointed out as a delinquent act. This is done because a summary offense alone is not a delinquent act. Even so, we do not see this as a basis for exemption from the provisions of § 6353.

It could also be argued that even if a modification hearing were not held when required by law; that one has been held before this case was argued before this appellate court and the fault thus cured. We do not adopt this line of reasoning. We cannot sanction the court holding a modification hearing for a confined juvenile after the time she should have been released. To do so would allow the Commonwealth to reap a legal advantage from its engaging in her illegal detention. Had appellant been released after 90 days—as she should have been in the absence of a modification hearing—there is no doubt that the court would have been unable to hold a modification hearing while she was at liberty and reconfine her. A new, distinct delinquency hearing with new circumstances as a basis for a finding of delinquency would have to be held in order to commit a

released juvenile. We cannot permit any less to be done when the juvenile is illegally detained past the proper period.

Appellant has been, and continues to be, illegally detained. We reverse and order her release.

CAVANAUGH, J. concurs in result.