848 A.2d 1014 (2004)
In the Interest of J.J., A Minor, Appellant.
Superior Court of Pennsylvania.
Submitted January 6, 2004.
Filed April 26, 2004.
*1015 John Ciroli, Pittsburgh, for appellant.
Michael W. Streily, Deputy District Attorney, and Amy E. Constantine, Assistant District Attorney, for Commonwealth, appellee.
Before: JOYCE, STEVENS, and TAMILIA, JJ.
OPINION BY STEVENS, J.:
¶ 1 This is an appeal from the Order entered by the Court of Common Pleas of Allegheny County, which extended the duration of a consent decree ordering Appellant J.J., a juvenile, to pay restitution. Herein, J.J. argues that the lower court had no authority under the Juvenile Act[1] to order restitution without first adjudicating J.J. delinquent following a hearing. We find that the Act does not prohibit restitution as a term of a consent decree voluntarily entered between a juvenile and the Commonwealth, but we nevertheless vacate and remand for a proper determination of the amount J.J. is able to pay.
¶ 2 The Juvenile Petition charging J.J. with the delinquent acts of aggravated assault, terroristic threats, and disorderly conduct made the following allegations:
According to the information and belief of Officers Baur and Gammiere of the Pittsburgh School Police, said [fifteen year old] child, in Allegheny County, on or about January 11, 2001, attempted to cause or intentionally or knowingly caused serious bodily injury to Security Officer Stephen Shaulis, an employee of Brashear High School, in the performance of duty, by grabbing a pencil and attempting to stab him with it. In addition, said child threatened to commit any crime of violence with intent to terrorize Security Officer Stephen Shaulis by threatening to kill him. Also, said child, with intent to cause substantial harm or serious inconvenience, created a hazardous or physically offensive condition which served no legitimate purpose by resisting being escorted to the security office and repeatedly using profanity. In the same course of events, a teacher, Gabriel Mingrone, while assisting Security Officer Shaulis in restraining and escorting said child to the office, sustained injuries which required medical attention and surgery.
Juvenile Petition dated 1/24/02.
¶ 3 Prior to a delinquency hearing, however, J.J. and the Commonwealth acceded to a consent decree pursuant to 42 Pa. C.S.A. § 6340. The terms of the consent decree were acknowledged by both parties at a March 26, 2002 hearing before the lower court:
COMMONWEALTH: At this point, the Commonwealth has agreed to amend the aggravated assault to a simple assault, and to offer the juvenile a consent decree with a couple of additional conditions. There is a question for [sic] restitution for the teacher Gabriel Mingrone... who assisted the security officer who was involved in the altercation with the juvenile.
We would like to request that restitution be left open and have a restitution *1016 hearing scheduled, but depending on the outcome of the consent decree, that if at the expiration of the six months, if the restitution request for some reason has not been resolved... that it can be continued for that as necessary for that reason.
THE COURT: Okay.
COMMONWEALTH: Even if there's been no violations by the juvenile.
COUNSEL FOR J.J.: Your Honor, Stacey Steiner from the Office of the Public Defender on behalf of the juvenile.... [J.J.] has no problem with that, Your Honor....
* * *
THE COURT: Did you go over this with your client?
COUNSEL FOR J.J.: Yes.
THE COURT: Does he understood [sic] the terms of this?
COUNSEL FOR J.J.: Yes, Your Honor....
* * *
THE COURT: Do you understand that the restitution on this is to remain open and it will be extended until restitution is resolved?
J.J.: Yes.
N.T. 3/26/02 at 2-5. On that same date, the parties signed and effected the consent decree. Among the enumerated "Accountability Conditions" of the decree was that J.J. "shall...[f]ulfill the Court ordered restitution obligation of $ "open" with minimum monthly payments of $______." Directly underneath this condition was the "Special Accountability Condition," inter alia, that a "restitution hearing [was] to be held in [the] matter."
¶ 4 At the restitution hearing of May 14, 2002, the parties disputed whether Mr. Mangrone was entitled to restitution when he received five paid sick days from work as a result of his attack-related injuries. Counsel for J.J. acknowledged that restitution for lost work was a term of the consent decree, but her argument was that Mr. Mangrone had not, as it turned out, suffered a loss where he had been able to use five paid sick days for the time off. The lower court disagreed, determining that the loss of the five sick days from Mr. Mangrone's retirement package was the basis for restitution. Based on Mr. Mangrone's testimony regarding his compensation, the court set restitution at $1,439.52. J.J.'s ability to pay restitution, though raised in passing by counsel for J.J., was never addressed by the lower court.
¶ 5 The hearing thus ended and the lower court entered its Order of May 14, 2002, ordering J.J. to remain on the consent decree, and to pay restitution to Mr. Mangrone. After the court entered a subsequent order extending the decree and obligation to pay restitution, this timely appeal followed.
¶ 6 J.J. contends that the court was without authority under the Juvenile Act to order restitution without having first adjudicated J.J. delinquent, and argues that the restitution amount was the invalid result of speculation without inquiry into J.J.'s ability to pay.[2] To J.J's first contention, we hold that nothing in the Act excludes the remedy of restitution from the set of appropriate conditions and terms of a consent decree.
¶ 7 A petition alleging that a child is delinquent must be disposed of in accordance with the Juvenile Act. In Interest of Bosket, 404 Pa.Super. 265, 590 A.2d 774, 776 (1991). Dispositions which are not set forth in the Act are beyond the power of *1017 the juvenile court. Id. Under the Act, petitions may be disposed of in three ways: (1) by informal adjustment; (2) by consent decree, or (3) by hearing. Commonwealth v. J.H.B., 760 A.2d 27 (Pa.Super.2000).
¶ 8 As J.J. correctly notes, where a petition is disposed of by hearing, Section 6352(a)(5) states:
(a) General Rule.If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment....
* * *
(5) Ordering payment by the child of reasonable amounts of money as fines, costs or restitution as deemed appropriate as part of the plan of rehabilitation considering the nature of the acts committed and the earning capacity of the child....
42 Pa.C.S.A. § 6352(a)(5). We disagree, however, with J.J.'s argument that authority to order restitution occurs only in the Section 6352 context.
¶ 9 First, J.J. mistakenly reads Section 6352 as if it said "only if the child is found to be a delinquent does the Juvenile Act authorize a court to impose restitution." The plain language of Section 6352 does not so limit the applicability of restitution, but merely permits an order of restitution if a juvenile is first found to be delinquent. Nothing in Section 6352 forecloses the possibility of restitution in alternate dispositions.[3]
¶ 10 Second, J.J.'s case was disposed of by consent decree and is thus subject to the Act's Section 6340. Section 6340 authorizes a juvenile court to enter an order placing an allegedly delinquent child under supervision prior to, and as an alternate to, adjudication according to terms and conditions agreed upon by the parties. Section 6340(c.1) specifically addresses a decree's terms and conditions, providing that they "shall, as appropriate to the circumstances of each case, include provisions which provide balanced attention to the protection of the community, accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community." 42 Pa.C.S.A. § 6340(c.1) (emphasis added).
¶ 11 Section 6340 thus confers discretion on the juvenile court to tailor conditions appropriate to the case, but still mandates accountability be part of the decree. It cannot be seriously disputed that making a victim whole through restitution is a most obvious and reasonable way to ensure accountability under this provision. Indeed, the above excerpt of Section 6340 is virtually identical to the language in Section 6352 justifying the power to order restitution.
¶ 12 Even if we were to question the legislative intent behind the term "accountability" such that review of factors enumerated in 1 Pa.C.S.A. § 1921 were necessary to ascertain the term's meaning, we would still find the term to contemplate the imposition of restitution in consent decrees under Section 6340. Restitution is consistent both with remedying the mischief addressed by the Act, and with the Act's dual objective in cases of this sort of *1018 rehabilitation and avoidance of stigma that an adjudication of delinquency brings. Indeed, without the option of restitution to impress upon a juvenile the seriousness of his or her conduct, the Commonwealth is far less likely to suspend adjudication proceedings in favor of consent decrees, and Section 6340's goal of sparing otherwise good candidates the stigma of adjudication is undermined. See Commonwealth v. Wexler, 431 A.2d 877, 494 Pa. 325 (1981) (recognizing in consent decrees the role of avoiding the stigma of adjudications).[4]
¶ 13 For these reasons, we find that the lower court had authority under the Act to enter a consent decree obligating J.J. to pay restitution. J.J.'s claim to the contrary, therefore, fails.
¶ 14 J.J. next challenges the discretion of the court in awarding an allegedly speculative amount of restitution without determining J.J.'s ability to make the payments. Especially because J.J. has provided this Court with a concise statement of reasons for allowance of appeal pursuant to Pa.R.A.P. 2119(f), our review of this issue is appropriate. See In the Interest of D.D., 695 A.2d 827 (Pa.Super.1997).
¶ 15 Where the parties had left the amount of restitution for the court to calculate, the court was obligated under both the Act[5] and our jurisprudence to arrive at an amount that did not exceed J.J.'s ability to pay. See In the Interest of D.D., 695 A.2d at 829, 830-31. The lower court abused no discretion in relying on Mr. Mangrone's testimony to determine the amount of his loss, but it neglected to consider J.J.'s ability to pay before setting the restitution amount. This was error. We therefore remand the case back to the lower court for a hearing to determine, according to principles described in In the Interest of D.D., supra, J.J.'s ability to pay and the manner of payment.
¶ 16 Based on the foregoing, we vacate that portion of the Order imposing restitution in the amount of $1,439.52 and remand for proceedings consistent with this decision.
¶ 17 Order vacated; case remanded. Jurisdiction relinquished.
NOTES
[1] 42 Pa.C.S.A. § 6301-6361.
[2] This Court has previously declined to find J.J's issues waived under Pa.R.A.P.1925, and so we need not address J.J.'s additional argument against waiver.
[3] The present issue is distinguishable from the issue presented in In the Interest of D.D., 695 A.2d 827 (Pa.Super.1997), where a panel of this Court stated "restitution in Juvenile Court is governed by 42 Pa.C.S. § 6352," insofar as the issue there involved the amount of restitution imposed on a juvenile adjudicated delinquent. We rely on In the Interest of D.D. in addressing the next issue, infra, whether the amount of J.J.'s restitution is appropriate.
[4] While the purpose of a consent decree is to avoid the stigma of adjudication, if pursuant to 42 Pa.C.S.A. § 6340, (b) Objection, either the child or the district attorney objects, the court has the authority to proceed to findings, adjudication and disposition to achieve the same result but with greater stigmatization to the child.
[5] Consistent with our duty to interpret the Act as a whole, we find the shared language and plan of rehabilitation espoused in both Section 6352 and 6340 require a court to consider the juvenile's ability to pay restitution in both contexts. Indeed, it would be absurd to deny this consideration to a child who qualifies for a consent decree while granting the consideration to a child adjudicated delinquent.